CAMPBELL VS. HASTINGS, BRITTON & CO.

1. EVIDENCE OF PARTNERSHIP:

(1.) *Admissions of one partner.*

The admissions and declarations of one member of an alleged firm, in the absence of the others, are not admissible, as against them, to prove the partnership. It is only after a partnership has been proven that the admissions of one of the partners are competent evidence against the others.

(2.) *Commercial agency reports.*

The reports of a commercial agency are not admissible to prove a partnership, unless knowledge, or means of knowing of them, is brought home to the party attempted to be charged.

(3.) *Acts of one partner.*

The acts of one member of an alleged firm are inadmissible to establish the partnership, as against another who is not shown to have had knowledge, or the means of knowing of, and contradicting them.

(4.) *General reputation.*

Evidence of general reputation is not competent to establish a partnership as against one who was absent from the country and ignorant of the reputation.

(5.) *Admissions of an agent.*

The admission of an agent, not shown to have been made in connection with, and as part of an act, within the scope of his agency, is not competent to bind his principal, or establish a partnership.

2. ESTOPPEL : *To deny partnership.*

One who knowingly permits his name to be used as a member of a trading firm, under such circumstances as to mislead a stranger who deals with the firm on the faith that he is a partner, is liable as such.

3. DILIGENCE: *Where one is held out as a partner without his knowledge.*

Diligence in ascertaining and contradicting the report, is not required of one who is held out as a member of a partnership without his knowledge.

4. AGENCY: *Power of a general agent.*

A general power of attorney authorizing the agent to represent the principal in all his interests, in a given locality, does not empower him to embark the principal in a new and different business.

APPEAL from *Chicot* Circuit Court.

Hon. HENRY B. MORSE, Circuit Judge.

*Garland* for appellant.

*Pindall & Reynolds,* contra.

ENGLISH, C. J. On the 28th of April, 1868, Hastings, Britton & Co., merchants of St. Louis, brought assumpsit by attachment, in the circuit court of Chicot county, against George W. Campbell, on an open account for goods, wares and merchandise, amounting to $1,859.62. The declaration alleged that the goods, etc., were purchased of the plaintiffs by the defendants, and William C. Howell (not sued), who were partners in trade under the firm name of W. C. Howell & Co.

The bill of particulars is dated St. Louis, October 9, 1867, and the goods are charged to W. C. Howell & Co., Gaines Landing, Ark.

Lands of Cambpell, in Chicot county, were attached April 30, and he was personally served with process, August 24, 1868.

Campbell pleaded nonassumpsit; the cause was finally tried

September 27, 1872, and verdict in favor of plaintiff for $2,385.98.

Campbell moved for a new trial on the grounds :

1. That the verdict was contrary to law and evidence.

2. That the court erred in permitting the plaintiffs to introduce incompetent evidence.

3. In charging the jury.

4. In giving instructions asked by the plaintiff.

5. In refusing instructions moved for defendant.

The court overruled the motion for a new trial, and gave judgment for plaintiff. Defendant took a bill of exceptions, setting out all the evidence, and the instructions given and refused, and appealed to this court.

Campbell denied that he was a partner in the firm of W. C. Howell & Co., and that was the matter of contest on the trial.

We are under the impression, from a careful examination of the record, that the jury might not have found their verdict for the appellees, but for the admission of incompetent evidence, and misdirection of the court.

The substance of so much of the evidence only as may be necessary to a proper understanding of the questions of law, ruled upon by the court, need be stated. There was evidence conducing to prove that appellant, Dr. George W. Campbell, had resided in New Orleans about fifty years. For thirty years he practiced medicine, and during the remaining years, engaged in planting sugar and cotton. For many years, he and his brother Richard M. Campbell were joint owners of a plantation in Chicot county, Arkansas, known as Elmwood, and Gaines Landing is on part of this place. In September, 1865, Richard M. sold his interest in this plantation to appellant, but remained on the place for some years as his agent. There was no direct evidence that appellant had, at any time, engaged in mercantile business. He occasionally visited the

Elmwood plantation. About the 10th of April, 1867, he left New Orleans for New York, and on the 20th, sailed for Europe. He returned to New Orleans in the following November, but did not visit Elmwood until April or May, 1868.

During the fall of 1866, William C. Howell and Richard M. Campbell formed a partnership under the style of W. C. Howell & Co., located at Gaines Landing. The storehouse, warehouse, etc., at the landing, belonged to the estate of Eugene Saunders, and in the fall of 1867, they were purchased at administrator's sale for appellant, who owned the land on which they were situated.

In April, 1866, appellant executed to his brother, Richard M., a very general power of attorney to represent him in all his business in Arkansas.

Howell purchased of appellees the bill of goods sued on, October 9, 1867, and about the same time, purchased goods of other merchants of St. Louis, representing that appellant was a member of the firm of W. C. Howell & Co.

Before this, Richard M. Campbell had signed appellant's name to articles of partnership purporting to be entered into between William C. Howell and appellant. This seems to have been done without the knowledge of appellant, and, as he claimed, without authority from him.

Appellees were permitted to prove by depositions, and by witnesses examined at the trial, declarations of Howell, and admissions of Richard M. Campbell, made in the absence of appellant, that he was a member of the firm of W. C. Howell & Co. Also that he was represented in mercantile agency reports as a member of that firm. Also to introduce proof of general reputation that he was a member of the firm. To the introduction of all such evidence, the appellant objected, and the objections were reserved to be determined when the court settled the instructions to be given to the jury. But when the

court charged the jury, none of the evidence objected to seems to have been excluded.

Appellees read in evidence the depositions of John B. Maud, James M. Hamilton, William Young, and Alfred M. Britton, taken in St. Louis.

Maud deposed that he was a member of the firm of Appleton, Noyes & Co. That Howell bought goods of his firm October 8, 1867, and, about the same time, of Hastings, Britton & Co., William Young, etc., and Wear & Hickman, all of St. Louis, for the firm of W. C. Howell & Co., of Gaines Landing, Arkansas. That Howell stated that appellant (George W. Campbell) was a member of the firm of W. C. Howell & Co., and upon that representation, was enabled to purchase goods on time of the houses mentioned. That the general belief and repute among the St. Louis merchants who sold goods to Howell was, that appellant was his partner. That Howell created this repute by saying that appellant was a member of his firm. Howell had been refused credit. Witness did not know appellant personally. Howell told witness that there were articles of copartnership between him and appellant. Witness did not know whether appellant signed them, or knew of their existence.

Britton, one of the appellees, deposed that he was not acquainted with appellant. That his firm sold goods to Howell, October 9, 1867, on credit, upon representations made to them by Howell at the time, that George W. Campbell, of the house of G. W. Campbell & Co., of New Orleans, was his partner. Howell further told witness that G. W. Campbell was very wealthy, and was then in Europe on a pleasure trip. The general belief among the merchants of St. Louis, who traded with Howell about that time, was, that G. W. Campbell was his partner. Appleton, Noyes & Co., and Young Brothers & Co., as well as appellees, gave credit to Howell on

the faith of his statements that G. W. Campbell was a member of his firm. Witness knew from conversations with members of the firm of Appleton, Noyes & Co., that they believed G. W. Campbell to be Howell's partner. Witness never saw any articles of copartnership between them, and only knew through Howell's representations that they were partners.

It may be stated here that it was proven, on the part of appellant, that there was a flour merchant in New Orleans by the name of George W. Campbell, of a firm under the style of G. W. Campbell & Co., but appellant was not in business, nor a member of that firm. He was generally known as Dr. Campbell.

Charles H. Carlton, an attorney of the court, and resident of Chicot county, introduced by appellees, was permitted to testify that, in July 1867, he received for collection of Hurt, Helmers & Voorhees, of St. Louis, an account against W. C. Howell & Co., of Gaines Landing, with instructions to sue unless Howell & Co. should give security. On the 20th of July, he went to see Howell about it, and met him at the Landing, on the river bank; and on telling him that he had such instructions, Howell said, " My firm now is as good as gold." Said he would like to have time, adding: " I will give you my note at sixty days." Witness told him that he would take a second note at thirty days, whereupon Howell said, " Perhaps you do not understand who my firm are now ; it is as good as gold," and stated that Dr. George W. Campbell was then a partner in his firm. Witness told him if he could show him that, it would be all he wanted. Howell proposed to show witness the articles of copartnership, and went to the store to do so ; but they being, as Howell said, in the safe, it locked, and the clerk who had the key, absent, witness told Howell if he said he had such articles, signed by George W. Campbell, witness would take his word for it ; and

did, upon such assurance, take the note of the firm. No one was present but witness and Howell at the conversation. About fifteen minutes afterwards, Richard M. Campbell came in, and witness said to him: "I had a claim against your house, and Mr. Howell has told me that the Doctor is a member of the house, and on that information, I have agreed to take the note of the house." In reply to which, Richard M. Campbell said, "Yes, that is all right." Once, about ten days afterward, meeting Richard M. Campbell on the road, about the same conversation occurred, he saying it was all right. The first conversation occurred at Gaines Landing. The store and other buildings were on Dr. Campbell's land. It is an important landing at which a heavy business is done with a large back country. The plantation belonged to Dr. Campbell, and was then being cultivated. Richard M. Campbell was then, and had been since the close of the war, in charge of the plantation as Dr. Campbell's agent. Up to the time of this transaction, it never occurred to witness who composed the firm of W. C. Howell & Co.

After that, he brought the suits against Crute & Childress [before put in evidence by appellees], for the firm. It was the general understanding throughout the county that Dr. George W. Campbell was a partner in the firm. Richard M. Campbell was then considered insolvent. Howell was known to have no property, but was a good business man. On cross-examination, witness stated he represented several claims against Dr. Campbell as a partner in the firm of W. C. Howell & Co., in suit, and pending in the court at the time of the trial, and on a former trial of this cause, was of counsel for appellees. Only a few persons, some four or five, had spoken to him of Dr. Campbell being a member of said firm of W. C. Howell & Co. On reexamination, witness stated that before he went to Gaines Landing to settle the claim of Hurt, Hel-

mers & Voorhees, it was not a matter of importance to him who were partners of the firm.

Thomas J. Swift, for appellees, testified that he was in the employ of W. C. Howell & Co., from the time they commenced business in the fall of 1866, at Gaines Landing, until December 1867, when he was absent for three months, then returned and remained until the spring of 1868, when McCoy took charge of the business, and it was conducted in his name. In the beginning, the cards of the firm showed Richard M. Campbell to be the sole partner of William C. Howell. In the early part of the summer of 1867, Howell scratched the name of R. M. Campbell from the cards, and put the name of George W. Campbell on them instead. The cards were to be sent west for the fall trade. Richard M. Campbell was at home, on the Elmwood plantation, or at the Landing, when the change was made in the cards, he being in charge of the plantation. Did not know whether he knew of the change of the cards, but it was a public thing, and he could have known it, and he was in the store frequently. After claims against the firm, and after the change of the cards, it became generally considered that George W. Campbell was a member of the firm. Witness never saw articles of partnership. Much business was done by the house of Howell & Co., and in the spring of 1867 by another house at Gaines Landing. Howell & Co. did a large receiving and forwarding business; went as far back as Bonham, Texas. The cards, after they were changed, were made public, and sent out everywhere. On cross-examination, testified that Dr. George W. Campbell was not on the place in the spring or summer of 1867; thought, but not certain, that he was there once or twice in the fall of that year. Richard M. Campbell was there until the last of May; not sure he was there after that. He went away about that time. The cards were changed about the 1st of June. Wit-

ness knew of no other means or mode by which the impression got out that Dr. Campbell was a member of the firm, except by means of the cards, and what Howell said and did. Richard M. Campbell was in bad health when he left.

L. A. Pindall, of counsel for appellee, was permitted to testify that the claim in suit was sent him for collection about the last of December 1867, and he went to Gaines Landing to see Howell & Co. about it. He asked Howell whether it was Richard M., or George W. Campbell that was a member of the firm, and whether George W. was a member; and in answer to the latter question, Howell said, "That was always my understanding." Witness said to him that he ought to know; and he replied: "Yes, and that was always my understanding." From some source or other, witness had learned that there was a doubt about who was the partner; that there would be some difficulty in proving who was the partner; that it had been denied, then recently, that George W. Campbell was a member of the firm.

John A. Swift, for appellees, testified that he was in the employ of W. C. Howell & Co., from November, 1866, until "the thing ended"—until McCoy took the business. Was chiefly employed as shipping clerk, and when there was a press of business, acted as salesman. Kept the warehouse books of freight received and forwarded. Had access to the safe in the store, but nothing to do with the books, but could inspect them at pleasure. Dr. Campbell was at the plantation occasionally; could not say when, but not often. Could not remember the day or year when he was there. Richard M. Campbell was at the store often. Witness saw the articles of copartnership of W. C. Howell & Co., in the spring or summer of 1867, and read them. They were signed "W. C. Howell," and "G. W. Campbell." Never saw Dr. Campbell write, and could not swear to his signature, etc.

Campbell vs. Hastings, Britton & Co.

Howell told witness that originally (in the fall of 1866), there was no partnership agreement.

Early in the spring of 1867, he told witness that " now he had the thing all fixed, to suit him;" that he had a partnership agreement with Dr. G. W. Campbell. Dr. Campbell was not there, as witness recollected, that spring. The impression of witness was, that Howell had had it fixed up in New Orleans, but he did not remember that Howell had then recently been there, though he frequently went to New Orleans. The business of Howell & Co. began on letters of credit given by a house in New Orleans to Richard M. Campbell. In the spring of 1867, Howell told witness that Dr. Campbell was his partner, and that Richard M. had nothing to do with the business ; and from that time and from that statement, and from the articles, he believed Dr. Campbell to be the partner. As clerk, he saw many people, but never heard much said as to who was partner until June or July 1867, or later. He went out to canvass for the house. Did not know who was generally reputed to be partner. He thought Dr. Campbell was, and so represented to others. Never heard Richard M. Campbell say anything about the partnership until the house failed. He was not present at any conversation in which it was mentioned that Dr. Campbell was a partner. In the years 1866 and 1868, Richard M. was manager on the Elmwood plantation. In 1867, it was leased to Symington & Handy. No supplies to it were furnished from the store of Howell & Co. After witness was told that Dr. Campbell was a partner, he refused to treat or recognize Richard M. as such. On one occasion witness spoke to him of the partnership agreement in the safe, and Richard M. then said that that agreement was got up to relieve Howell—to keep the firm from being responsible for a debt of his (Richard M.'s.). When witness went out canvassing he had lots of the

cards of the firm, which had on one corner, at the top, the name of Richard M. Campbell, and on the other, the name of W. C. Howell, and in the middle, W. C. Howell & Co., and Howell told him to cut off the individual names, etc.

Richard M. could have known that Dr Campbell was held out as a partner. Did not remember that Dr. Campbell was at Gaines Landing in the fall of 1867. Letters frequently passed between the Doctor and Richard M., etc.

The articles were kept in a drawer of the safe. Howell did not give witness permission to read them.

Witness had no other reason for believing that Dr. Campbell was a partner, than what Howell said, and seeing his name to the articles. He knew of no other way in which the impression got out that Dr. Campbell was a partner than by what Howell said and did, directly and indirectly, etc. The letters of credit on which Howell & Co. started business were obtained by Richard M. in his own name and favor for about $5,000. Did not see the articles before Richard M. went north for his health, and did not remember their date, nor in whose hand-writing the body of them was. He supposed the signature of Dr. Campbell to be genuine simply because Howell told him he had articles signed by him, etc.

W. C. Howell, whose deposition was read on the part of appellant, stated in substance that the firm of W. C. Howell & Co., formed for mercantile purposes, was composed of Richard M. Campbell and himself, and continued in business without any change of members, from November 20, 1866, to some time in April 1868. A copy of their articles of co-partnership was made an exhibit. He put in his services against the capital of Richard M., and use of the Landing, expenses to be borne and profits divided equally. George W. Campbell had no connection with, or interest in the firm to his knowledge. If he ever did any acts to warrant the public,

Campbell vs. Hastings, Britton & Co.

or individuals, in supposing him to be a member of the firm, witness had no knowledge of them. Witness used the name of George W. Campbell some time in September, 1867. The circumstances under which he used it were that Howell & Co. had some goods attached in St. Louis (for a debt of Richard M.), and in order to have no more trouble, and to have goods shipped without being attached, to shield the firm goods, and not to procure credit, witness used the name of George W. Campbell. For a like purpose, Richard M. signed the name of George W. Campbell to an instrument purporting to be articles of copartnership between him and witness. In July 1867, Richard M., being in bad health, left for the north. Fearing that the commercial business of W. C. Howell & Co. would be interrupted in his absence, by a judgment likely to be obtained against him, the articles were gotten up to protect the firm, and not with the view of obtaining credit or injuring others. Richard M. had no authority, within the the knowledge of witness, to sign the name of Dr. Campbell to such instrument, neither did he believe that the Doctor knew of, or consented to such use of his name. He was in Europe. Witness was authorized by Richard M. to use the instrument to ward off the judgment. Dr. Campbell received none of the profits arising from the business of W. C. Howell & Co. Witness did not know when he first learned that his name was used as above. He told witness, at New Orleans, in April, 1868, that he had been informed that his name was used by the firm of W. C. Howell & Co. Witness gave him no reason why it was used. When the firm of W. C. Howell & Co. commenced business, and when it was finally dissolved, publications were made in the newspapers of Monticello, giving the individual names of W. C. Howell and Richard M. Campbell as the partners.

Appellant testified, in substance, that he had resided in

New Orleans fifty years, during thirty of which he had engaged in the practice of medicine, and after that, in planting sugar and cotton.  Never engaged in mercantile pursuits.

In April, 1866, when he gave power of attorney to Richard M. Campbell, he had no other business in Arkansas than planting.  In and for 1867, the Elmwood plantation was leased to Symington & Handy.  He was there from about December 25, 1866, to January 2, 1867, to lease the place to them.  Then went to New Orleans, remained there until he left for New York, April 10, and from there started to Europe, April 20, 1867.  Returned to New Orleans from Europe about the last of November, 1867, and did not visit Elmwood until April or May, 1868.  There was no connection at any time between him and W. C. Howell.  Never saw Howell but once until after he returned from Europe.  That once was in December, 1866, or January, 1867, at Gaines Landing.  Had no acquaintance with him.

In May, 1868, witness looked him up in New Orleans, because he then heard that Howell had used his name in connection with his business.  The first intimation he had of this use of his name, was the presentation to him by Buck, of the house of Morrison, Buck & Co., of a note to that house given by W. C. Howell & Co.  This was at New Orleans, in the beginning of May, 1868.  When Buck spoke to him on the subject, witness told him he had not a note out in the world. Never had given any such note, and did not owe it.  A few days afterward, witness met Howell in Buck's office, who told Buck that witness had never been connected with the firm of W. C. Howell & Co.  Some months after, Morrison saw witness, and finding him not liable, went to Gaines Landing, and there, in July, the matter was arranged for settlement. He states in detail how this debt was settled.  At the request of his brother, Richard M., and believing this to be the only

Campbell vs. Hastings, Britton & Co.

debt of W. C. Howell & Co., with which his name had been connected, he aided in its payment, and was afterward reimbursed. Morrison obtained possession of the articles of copartnership to which his name had been signed by Richard M., without his knowledge or authority, and when he was in Europe, and showed them to him in New Orleans. They were dated July 18, 1867.

Morrison intimated that Richard M. had acted criminally in the use of his name, to induce him to aid in settling the debt, and on the debt being arranged, delivered the articles to him, and he forwarded them by mail to Richard M. Witness never at any time purchased, or authorized anybody to purchase, a cent's worth at the store of W. C. Howell & Co. That firm never had an account against him, upon any account whatever. Elmwood plantation was always supplied from New Orleans and elsewhere. Witness never had any interest in any commercial business of any kind in his life. He never did any act to authorize any one to suppose him to be a partner in the firm of W. C. Howell & Co., and was never aware that his name was used to obtain credit for it. Witness wrote occasionally to Richard M., who seldom wrote to him. The power of attorney given by him to Richard M. was never revoked, and he continued to act as the agent of witness in the management of the Elmwood plantation until his death. Witness had no business in Arkansas except that of the plantation, and gave Richard M. no other authority. After the execution of the power of attorney, Richard M. transacted all of the business of the plantation except when witness was there. He was not there from January, 1867, until the spring of 1868, and did not see Richard M. during that time. Never exchanged a word with Howell until after his return from Europe, and then in New Orleans in May, 1868, and would not have known him by sight.

It was in August, 1868, after Morrison had been to Gaines Landing, to arrange the claim of his house with Howell & Co., that witness for the first time saw the articles of partnership to which his name had been signed.

Witness knew nothing of the business of W. C. Howell & Co., nor when the firm was dissolved. It was his habit to visit Elmwood about once a year.     He was informed that Howell wrote the articles of copartnership above referred to, and got Richard M. to sign the name of witness to them to protect the partnership property against Richard M.'s individual debts, which was a dishonorable and improper thing.

I. As to Admissions of Howell.  When it is sought to charge several as partners, an admission of the fact of partnership by one is not receivable in evidence against any of the others, to prove the partnership.   It is only after the partnership is shown to exist, by proof satisfactory to the judge, that the admissions of one of the parties in relation to the partnership business or transactions are received in order to affect the others.

Here the very matter at issue was, whether there was a partnership between Howell and appellant; and the admissions or declarations of Howell, made in the absence of the appellant to the merchants of St. Louis, and to the witness in Chicot county, were not admissible to prove the partnership, and the court should have excluded them, or instructed the jury to disregard them.   1 Greenl. Ev., sec. 177.   *Whitney v. Ferris*, 10 Johns., 65; *Gstrom v. Jacobs et al.*, 9 Met., 457; *Tuttle v. Cooper*, 5 Pick., 414; *Robbins et al. v. Willard*, 6 id., 464; *Hutchins v. Childress et al.*, 4 St. & Por., 34; *Thornton v. Kerr et al.* 6 Ala., 823; Collyer on Partnership, Perk. ed., sec. 776, p. 675; *Wolle v. Brown*, 4 Whart., 366; Parsons on Partnerships, p. 194, note (r.); *Hahn v. St Clair S. Ins. Co.*, 50 Ill., 456.

Campbell vs. Hastings, Britton & Co.

II. As to Commercial Agency Reports. Appellees were permitted to prove, by some of the St. Louis witnesses, that appellant was represented in commercial agency reports to be a member of the firm of W. C. Howell & Co. Who made such reports, when they were made, to whom, and from where they were made, and if any, in what mode, were not stated. It was not shown that appellant had any knowledge of such reports, or that they were made under such circumstances as to raise a reasonable presumption that they might have come to his knowledge, so as to give him an opportunity to contradict them, or impliedly admit their truth by silence. The evidence of such reports, which was admitted, was very vague and loose, and may be classed as a low grade of hearsay evidence, and in the form offered, should have been excluded, or the jury should have been directed to disregard them.

Where one knowingly permits his name to be used as one of the parties in a trading firm, under such circumstances of publicity as to satisfy a jury that a stranger knew it, and believed him to be a partner, he is liable to such stranger in all transactions in which the latter engaged, and gave credit upon the faith of his being such partner. 1 Greenl. Ev., sec. 207.

The evidence relating to the commercial agency reports was not presented in a form to warrant its admission under this rule, or any other established rule of evidence.

III. As to Partnership Cards. Thomas J. Swift was permitted to prove that, in the beginning of the summer of 1867, Howell scratched the name of Richard M. Campbell from the cards of W. C. Howell & Co., and put on the name of appellant. From other evidence it appears that when this was done and when the cards so changed were sent out, appellant was in Europe. He left Elmwood for New Orleans early in January, 1867, and from thence went to Europe, and did not return to

New Orleans until November following (which was after appellees sold Howell the goods sued for), nor to Elmwood until April or May, 1868.    It was not shown that he in fact knew, or had a reasonable opportunity of knowing, that his name was so used upon the cards.

This act of Howell's was of no higher grade of evidence than his declarations, made in the absence of appellant, and when he had no opportunity of contradicting them, or admitting them by his silence; and the court should have so charged the jury.

IV. As to GENERAL REPUTATION, ETC.    It has been held that common reputation cannot be allowed as competent evidence to establish the existence of a copartnership between individuals.    That it is nothing more than rumor, and may have no foundation whatever to rest upon.    *Carter et al. v. Douglass,* 2 Ala., 500; *Halliday v. McDougall et al.,* 20 Wend., 81.

Whether it be admissible as auxiliary evidence is the subject of conflicting decisions.    See the case last cited.    Mr Collyer says: General reputation is not admissible in evidence, in aid of other testimony, to prove a partnership.    Col. on Part., Perk. ed., sec. 777.    So held also in an able opinion reviewing authorities, in *Scott et al. v. Blood,* 16 Me., 192.    See also *Sinclair v. Wood,* 3 Cal., 99.

Mr. Greenleaf says evidence of general reputation, or common report of the existence of a partnership is not admissible, except in corroboration of previous testimony.    2 Greenl. on Ev., sec. 483.

What corroborating facts must be proven, to render common reputation admissible, he does not state.

Questions as to partnerships arise in two aspects: 1st, as to the actual existence of the partnership; and 2d, as to whether a person has held himself out to the community as a partner,

or knowingly permitted others to do so, so as to induce strangers to give credit to the firm on his account, as above stated. Perhaps, whether in fact a partner or not, if there is a general reputation in a community where a firm is doing business, that an individual, who resides in the community or frequently visits it, is a member of the firm, this may be proven to raise a presumption that he knew that he was held out as, or represented to be a partner, and if corroborated by other facts, might conduce to render him liable as such.

In this case it was proven, that it was reputed among a few merchants of St. Louis of whom Howell purchased goods, in October, 1867, that appellant, who not only did not reside there and who was not shown to have been there at any time, but who was then in Europe, was a member of the firm of W. C. Howell & Co., of Chicot county, in this state. And this repute was manifestly manufactured by the declarations of Howell, made to such merchants, and among them the appellees, about the time he purchased goods of them. It was not shown that appellant could have had knowledge of such repute so as to contradict it, and prevent credit from being given to Howell on faith of such repute.

So it was not proven that there was any reputation in the community where the firm of W. C. Howell & Co. were doing business earlier than about the 1st of July, 1867, and then it was also produced, to the extent that it existed, by the declarations and acts of Howell, when appellant was in Europe, and the goods sued for were purchased by Howell of appellees, before his return. It was also shown that he resided in New Orleans, and did not visit Elmwood oftener than once a year.

We think that the reputation that he was a partner of Howell, shown to have originated and existed, as proven in this case, was inadmissible to prove the partnership, or to raise a presumption that appellant knew that he was held out as a

partner, and that the court should have instructed the jury to disregard it.

We shall refer to this subject again, when reviewing the instructions of the court.

V. As to Admissions of an Agent. In July, 1867, Howell told Charles H. Carlton, who had for collection a claim against W. C. Howell & Co., that appellant was a member of the firm, etc. Witness repeated Howell's declarations to Richard M. Campbell, who was the agent of appellant, under a very general power of attorney, to attend to his business in Arkansas, and Richard M. said: "Yes, that is all right," thereby impliedly admitting that appellant was a member of the firm. Was the admission of Richard M., so made, competent evidence to prove the partnership? In other words, was the admission of the agent, made under such circumstances, the admission of the principal? We think not.

"The principal constitutes the agent his representative, in the transaction of certain business; whatever, therefore, the agent does, in the lawful prosecution of that business, is the act of the principal, whom he represents. And when the acts of the agent will bind the principal, then his representations, declarations and admissions, respecting the subject matter, will also bind him, if made at the same time, and constituting part of the *res gestœ*. They are of the nature of original evidence, and not of hearsay; the representation or statement of the agent in such cases, being the ultimate fact to be proved, and not an admission of some other fact. But, it must be remembered, that the admission of the agent cannot always be assimilated to the admission of the principal. The party's own admission, whenever made, may be given in evidence against him, but the admissions or declarations of his agent bind him only when made during the continuance of the agency in regard to a transaction then depending *dum fervet opus*. It

is because it is a verbal act, and part of the *res gestœ*, that it is admissible at all, and therefore, it is not necessary to call the agent himself to prove it; but whenever what he did is admissible in evidence, then it is competent to prove what he said about the act while he was doing it," etc.   1 Greenl. Ev., secs. 113, 114.

In the case of *Bentham v. Benson*, Gow's N. P., 45, Ch. J. DALLAS says: "It is not true that where an agency is established, the declarations of an agent are admitted in evidence merely because they are his declarations; they are only evidence when they form a part of the contract entered into by the agent on the behalf of his principal, and in that single case they become admissible." To this effect is the law laid down in *Fairlie v. Hastings*, 10 Ves. Jr., 123.

When a party is bound by the act of his agent, and the declarations of the agent qualify or affect that act, these declarations may be proved against his principal; but they are not proved as admissions or declarations merely, but as part of the *res gestœ*. The acts and the words together make the whole thing to be proved. But what the agent may say at another and subsequent time is not evidence against the principal. *Thallhimer v. Brinckerhoff*, 4 Wend., 394; *Gould & Co. v. Tatum*, 21 Ark., 329.

When Richard M. Campbell made the admission in question that appellant was a partner in the firm of W. C. Howell & Co., it was not shown that he was doing any act, or transacting any business for appellant, within the line of his agency, of which such admission was a part, or so connected as to be part of the *res gestœ;* and the court should have excluded the evidence of such admission, or directed the jury to disregard it.

VI. AS TO THE INSTRUCTIONS GIVEN FOR APPELLEES. Appellees moved the court to give fifteen instructions, to each of which the appellant objected, except the 9th and 15th. The

.court gave all except the 10th and 12th.    Those given against the objection of appellant are the 1st, 2d, 3d, 4th, 5th, 6th, 7th, 8th, 11th, 13th and 14th.

*The first:*  " General reputation, connected with corroborating circumstances, will be sufficient, at least *prima facie*, to establish the fact that George W. Campbell was a partner with W. C. Howell in the firm of W. C. Howell & Co."

We have shown above that Mr. Greenleaf states the law to be that "evidence of general reputation, or common report of the existence of the partnership, is not admissible, except in corroboration of previous testimony." (Greenl. Ev., sec. 483.) The 9th instruction offered for appellant was in the language of Mr. Greenleaf, but the court refused it, and gave the first asked for appellees.

There may be cases in which general reputation may be such, and exist under such circumstances in relation to the party to be affected by it, as to render it admissible, in corroboration of previous testimony, to prove a partnership; but when admitted, whether it will be sufficient to make a *prima facie* case of partnership, will depend upon the character and force of the corroborating circumstances proven in the cause. Whether the corroborating circumstances referred to in this instruction were such as were assumed to be proven in this cause, or to be conjectured by the jury, or suggested by the ingenuity of counsel, we do not know.

We have before shown that the reputation, as proven, that appellant was a member of the firm of W. C. Howell & Co., was not shown to exist under such circumstances in relation to him, as to render it admissible to prove the partnership, or that he knowingly permitted himself to be held out to the community as a partner, so as to render him liable as such. It follows that the first instruction should not have been given in the language in which it was proposed.

*The second:* "If W. C. Howell acknowledged the existence of articles of copartnership between himself and George W. Campbell, the defendant, and Campbell obtained possession of such articles by payment of a debt of the firm of W. C. Howell & Co.; and when called on to produce said articles, replies that after obtaining the articles, he sent them to his brother, that his brother was his general agent, and that said brother destroyed said articles; such making away with the articles affords strong grounds of suspicion, and warrants the jury in inferring that said Howell and George W. Campbell were partners."

We have before shown that the admission of Howell that articles of copartnership existed between him and appellant, made in the absence of the latter, were not admissible, and that the court should have instructed the jury to disregard them.

As to the remaining feature of this instruction, the transcript shows that on the 16th of April, 1869, appellees filed a petition in the court below, stating that they had been informed through the deposition of Moses B. Morrison, on file in the cause, that appellant had received from him a paper, purporting to be articles of copartnership between appellant and W. C. Howell. That said paper related to the merits of the cause, and was essential in the trial; praying an order upon appellant to produce it. The court made 'the order accordingly, and before the trial, appellant's response was filed. He stated that said paper was delivered to him by Morrison, under the circumstances as stated, substantially, in the deposition of Morrison. That appellant admitted at the time he received it, that it concerned the honor and the interest of Richard M. Campbell alone, and that he had no interest in it; and that by the first mail after he received the paper of Morrison, he inclosed it in a letter to Richard M. Campbell; since when he had not seen it, and did not know what had become of it, but

had heard Richard M. say he had destroyed it. At any rate, appellant was not able to produce the paper.

The deposition of Morrison is lengthy, and it is not deemed material to state its substance. He corroborates the testimony of appellant as to the circumstances under which he delivered the paper to appellant. Morrison got the paper of Howell in May, 1868, and doubtless used it as a means of inducing appellant to aid his brother Richard M. in settling a claim which Buck, Morrison & Co. had against W. C. Howell & Co. Appellant denied to Morrison any connection with the firm, and that he signed or authorized his name to be signed to the paper. But believing, as he testified at that time, that this was the only debt of W. C. Howell & Co. with which his name had been connected, he aided Richard M. in paying it, at his request, and obtained from Morrison the paper in question, and forwarded it by mail, on the next day, to Richard M.

When a paper, material in the trial of a cause, is in the possession or under the control of a party, who destroys or refuses to produce it, it may raise the presumption that the paper, if produced, would affect him prejudicially. The general rule is *omnia præsumuntur in odium spoliatoris.* 1 Greenl. Ev., sec. 37.

We do not think that the conduct of the appellant in relation to the paper in question, as shown by the response, and the evidence relating to the matter, warranted the court in instructing the jury, that it afforded a "strong ground of suspicion," and would warrant them in inferring that Howell and appellant were partners.

It is not shown that at the time appellant received the paper of Morrison, and forwarded it to his brother, he knew that this suit, or any other, attempting to charge him as a partner of Howell, had been commenced. It is not shown that he was in possession of the paper, or that it was under his control when the order was made for him to produce it. If his pur-

pose was to make way with the paper, to prevent it being used as evidence against him, he might have destroyed it while in his possession, instead of inclosing it to his brother.

Moreover, if it had been produced, it could not, upon any showing that appears in the transcript, have been read in evidence. It appears that Howell fabricated the paper, and induced Richard M. Campbell to sign appellant's name to it, for the purpose of protecting the goods of W. C. Howell & Co. against individual debts of Richard M. It was shown that appellant did not sign the paper, and it was not proven that he authorized Richard M. to sign it for him, or that he at any time ratified or approved of the act. Nor does it appear that Richard M. really intended, if he had power to do so, to make appellant a partner of Howell, but to use his name for the purpose above indicated.

*The third:* "If George W. Campbell was notified that he had been held out to the world as a partner, or if by using ordinary diligence or care, he might have known that he was so held out as such partner, and failed to repudiate and publicly disown such partnership, the jury may conclude that George W. Campbell was a member of said firm of W. C. Howell & Co."

No doubt if appellant was notified that he was held out to the world as Howell's partner and failed to contradict it, he would have been liable as such partner, to persons crediting the firm on his account. But there was no proof that he had any knowledge that he was held out as a partner until after his return from Europe, and after appellees had given credit to W. C. Howell & Co.; and when it was made known to him, he contradicted it, as he and others testified.

But the jury were told, in effect, that it was his duty to use ordinary diligence and care to ascertain whether he was so held out as a partner. Perhaps if he had not returned to New.

Campbell vs. Hastings, Britton & Co.

Orleans in January, 1867, nor gone to Europe, but remained at Elmwood all the year, and mingled with the people of that vicinity, and especially Howell's clerks, and had followed Howell to St. Louis in the fall, and kept close upon his tracks, he might have known that he was held out as a partner. But we hardly think the law required him to do that. We know of no law that requires a man to anticipate, or suspect that he is to be held out as somebody's partner, and to be on the look-out for such reports so that he may be swift to contradict them when he finds them afloat.

*The fourth:* "That if George W. Campbell, or his general agent in Chicot county, knew that said Campbell was reputed as a partner in the firm of W. C. Howell & Co., or could by reasonable diligence have known of such repute, and he or his said agent, when spoken to in regard to said Campbell being a partner, did not deny it, but said it was all right, the jury may infer that he was such partner."

There was no proof that appellant was spoken to about a repute that he was a partner of Howell, and failed to deny it, but said it was all right. There was proof that Richard M. Campbell, his agent, was spoken to on the subject, and im-pliedly admitted him to be a partner, but we have shown that an admission of the agent, made under the circumstances ap-pearing in evidence, did not bind the principal. As to obli-gations upon appellant to use diligence to ascertain whether he was reputed to be a partner of Howell, our remarks upon the third instruction are applicable to this.

*The fifth:* "That mere silence will be taken as consent, after notice or after general reputation of partnership was established in the community where the firm carried on its business, and after such information would have reached him, if he had been exercising ordinary care in looking after his property or interests."

We are aware of no law that required appellant to look after his property or interest in Arkansas with more care than the evidence in this cause shows him to have done.

He thought proper to lease his plantation for the year 1867, and then take a trip to Europe, leaving his brother as an agent to look after it. Suppose he had abandoned his Arkansas estate altogether, and left it in the care of no one, and paid no attention to it, would he, on that account, be chargeable with notice that there was a general reputation in the community where his estate was situated that he was a partner in a firm doing business there? We think not.

*The sixth:* "That if credit was extended to said firm by plaintiffs, by reason of George W. Campbell being a member of it, and if said Campbell remained silent after general reputation of partnership, and suffered such credit to be given, that he will be liable as a partner, though not, in fact, a partner in said firm."

This instruction should not have been given, because it was not proven that appellant knew of any general reputation that he was a partner of Howell, or that the reputation existed under such circumstances in relation to him as to raise a reasonable presumption that he must have known it; and the instruction does not indicate the necessity of such knowledge on his part to render him liable.

*The eleventh* may be disposed of here, as the remaining instructions relate to the same matter, and may be considered together:

"11. That the willful suppression of the evidence of crime, or liability, by any one charged with such crime or liability, justifies the presumption of liability."

This is substantially a correct expression of a principle of the law of evidence, as indicated in considering the *second* instruction, and our remarks upon that are applicable to this.

*The seventh, eighth, thirteenth* and *fourteenth:*

"7th. The principal is liable for the acts of his agent in the course of his employment, though done without or contrary to orders, where the management of the business is given by power of attorney, as in this case, unless he engage in business so contrary to the power conferred upon him on the face of the articles as to amount to a fraud upon his principal, and the fraud must be apparent on its face.

"8th. If the jury believe from the evidence that Richard M. Campbell was acting under the power of attorney as exhibited in this case, when said articles of copartnership between W. C. Howell and George W. Campbell were entered into by him signing the name of said George W. Campbell, they should find for plaintiffs in this case, unless he engaged in business so far contrary to the power conferred by the articles as expressed on its face, as to amount to a fraud upon his principal, and this fraud must be apparent upon its face.

"13th. The jury are instructed that the power of attorney from George W. Campbell, read in evidence, is a general one, and vested in the said agent an unlimited authority to act for the said George W. Campbell, in all matters in which the said George W. Campbell was interested in Arkansas.

"14th. If the said George W. Campbell owned a plantation, stock, storehouse, warehouse, and important landing in the state of Arkansas, and the business of merchandising and general forwarding and commission business was carried on at said storehouse and landing, the object and effect of said power of attorney was to enable the said agent to represent his said principal in such manner as said agent might think fit in regard to all matters connected with said plantation, stock, storehouse, warehouse, landing and business, or any other within the state of Arkansas, in which said principal was interested, and the manner in which said business should be carried on,

managed or conducted, was left entirely to the discretion of said agent; and if the said agent, in the exercise of his discretion in and about the management of said business, saw proper to represent his said principal, to carry on said business in the name of a firm, or to form a partnership for that purpose, and entered into the articles of agreement described in the testimony of M. B. Morrison, and if plaintiffs or other third parties extended credit to said firm on the faith of said partnership, and that the defendant was liable for the debts of said firm, they will find the issues in this case for the plaintiffs."

The power of attorney to which these instructions relate, directly or indirectly, was executed by appellant to Richard M. Campbell, before a notary public of New Orleans, on the 16th of April, 1866. It is long, formal, general and special. It is deemed unnecessary to copy more than the following paragraph:

"It is expressly the object and intention of said constituent to grant all necessary power to his said attorney, to enable him to fully and legally represent him, in such manner as the said attorney may think fit within the state of Arkansas, in all matters wherein the said constituent may be interested."

The evidence in this case shows that down to the time this power of attorney was executed, appellant had never engaged in mercantile or commercial pursuits. He had planted sugar in Louisiana, and cotton in Arkansas. He owned the Elmwood plantation, and some wild lands in the state. He had purchased the interest of Richard M. Campbell in the Arkansas lands, September 15, 1865. The warehouse, etc., at Gaines Landing were on part of the Elmwood lands, but were not purchased for appellant until about October 19, 1867, previous to which they belonged to the estate of Saunders. Before appellant visited Elmwood in the latter part of December, 1866, Howell and Richard M. Campbell had formed a mercantile

partnership, published their individual names as constituting the firm of W. C. Howell & Co., and were doing business at the Landing. Appellant was not acquainted with Howell. In the early part of the following summer, when appellant was in Europe, and when Richard M. Campbell was about to start north for his health, at the instance of Howell, he signed appellant's name to a paper, purporting to be articles of copartnership between Howell and appellant. The object of the paper, it seems, was not really an attempt to constitute appellant a partner of Howell, but to enable Howell to use the instrument to protect the effects of W. C. Howell & Co. against the individual creditors of Richard M. Campbell. In October, 1867, Howell purchased goods of appellees, representing to them that appellant was his partner. There was no proof that he had with him, and exhibited to appellees, the power of attorney given by appellant to Richard M., or the articles of copartnership to which the latter had signed the name of the former. The credit was given upon the declarations of Howell that appellant, personally unknown to the house, was his partner. There was nothing on the face of the power of attorney to indicate that Richard M. Campbell was authorized to embark appellant in mercantile business as a partner of any one. The circumstances in evidence which aid in ascertaining the purposes of its execution do not warrant the conclusion that such use of the power was contemplated by appellant. And there is no evidence that it was used as a means of imposing upon the appellees. They acted upon the declarations of Howell, and vague reports, such as prudent business men should not have confided in, without more cautious inquiry. Upon the face of the power of attorney, and the facts in evidence, the court should have refused to give to the jury the 7th, 8th, 13th, and 14th instructions.

VII. As to Appellant's Instructions. Thirteen in-

structions to the jury were asked for appellant, all of which
were refused.    They follow :

" 1.  That if they believe from the evidence that George W.
Campbell, the defendant, did not hold himself out to the
public, or did not allow others, with his knowledge and con-
sent, to hold him out to the public as a partner in the firm of
W. C. Howell & Co., he cannot be held liable as a partner,
unless it be proved by competent and sufficient evidence, that
he actually was a partner in said firm.

" 2.  That the power of attorney granted by George W. Camp-
bell to Richard M. Campbell, of date April 16, 1866, did not
empower Richard M. Campbell to make George W. Campbell
a member of a commercial partnership, or to originate or
establish a commercial or trading partnership with said George
W. Campbell as a member.

" 3.  That if the jury believe, from the evidence, that Richard
M. Campbell, without any other authority than that conferred
by the power of attorney granted to him by George W. Camp-
bell, of date April 16, 1866, signed the name of George W.
Campbell to a paper purporting to be articles of copartnership
between William C. Howell, and George W. Campbell,
such act of Richard M. Campbell did not make George
W. Campbell a partner, and did not in any manner bind
George W. Campbell, or make him liable for the debts
of William C. Howell & Co.

" 4.  That the holding out of one's-self to the world as a part-
ner as contradistinguished from the actual relation of partner-
ship, imports, at least, the voluntary acts of the party so
holding himself or permitting himself to be held out; it im-
plies the lending of his name to the partnership, and this
lending by the defendant, Campbell, is altogether incom-
patible with the want of knowledge (if the plaintiffs fail to
prove such knowledge), that his name was so used.

" 5. That if George W. Campbell was held out to the world as a partner of the firm of W. C. Howell & Co., the first question for the jury is (if he was actually not a partner), Was he so held out by his own authority and assent, or connivance? and if the jury find that it was by his own authority, assent, or connivance, the presumption is absolute that he was so held out as a partner to every creditor or customer; but if not by his authority, assent, or connivance, or negligence, he is not responsible as a partner, unless he actually was a partner.

" 6. That the question whether the defendant in this case is liable as a partner, because so held out by himself or with his consent, turns upon the force and meaning of his own acts; and if he knew that he was represented by Howell to be a partner, and made no objection, he is bound; but he cannot be made liable as partner, because so held out, unless the holding out is proved to have been with his own connivance; and the declarations and acts of Howell, implicating George W. Camppell as his partner, while they bind Howell, cannot affect Campbell, without some affirmation by the latter.

" 7. That unless the jury find that Dr. George W. Campbell had, before the credit in this case was given, done something that might fairly produce the impression that he was a partner, or that when another had done this, he failed, knowing thereof, to do what he should have done to remove or prevent the impression, then he is not liable as a partner, however general the belief created by the acts or words of others that he was a partner.

" 8. That the acts, declarations, and admissions of William C. Howell, are not competent evidence to establish the fact that George W. Campbell was a member of the firm of W. C. Howell & Co.

" 9. That evidence of general reputation, or common report, of George W. Campbell being a member of the firm of W. C.

Campbell vs. Hastings, Britton.& Co.

Howell & Co., is not competent evidence to prove the fact of such partnership, except in corroboration of previous testimony.

" 10. That the representations, declarations and admissions of Richard M. Campbell are admissible as evidence against George W. Campbell, on the ground that the former was the agent of the latter only in case they were made respecting the subject matter of his agency; and the rule admitting the declarations of the agent being founded on the legal identity of the agent and principal, they bind the principal, George W. Campbell, only so far as there was authority to make them.

" 11. That no representations, declarations, or admissions of Richard M. Campbell, while he was agent of George W. Campbell, bound the latter, or are evidence against him, except in cases within the scope of the authority confided to him ; and his representations, declarations, and admissions did not bind George W. Campbell, if they were not made at the very time of the contract, or as part of the *res gestæ,* but upon another occasion : what the agent has said may be what constitutes the agreement of the principal, or his representations and statements may be the foundation of, or inducement to the agreement. Except in one or the other of these ways, what is said by an agent cannot be evidence against his principal.

" 12. Wherefore, any statements or admissions by Richard M. Campbell, that George W. Campbell was a partner of the firm of Howell & Co., if no part of an agreement which Richard M. Campbell was making as agent, or of any statement he was making as inducement to such agreement, was mere narrative, and no evidence of the existence of the fact.

" 13. That the power of attorney given by George W. Campbell to Richard M. Campbell conferred upon the latter no

power, authority, or right whatever, to substitute the former in the place and stead of the latter as partner in a commercial firm, of which the latter was a member."

These instructions are substantially in accordance with principles of law, above announced in this opinion, were warranted by the evidence, and should have been given by the court.

The judgment must be reversed, and the cause remanded for a new trial; and it appearing that the appellant has died since the submission of the cause, the judgment of this court will be entered as of the date of the submission.